SULLIVAN *v.* LEARNED ET UX.

PARENT AND CHILD.—*Custody of Child.*—*Unconditional Decree in Divorce Cause Conclusive.*—Where a divorce is granted, and the care, custody, and education of a minor child is given to one of the parties, without limitation as to time or reservation of power to change it, the decree is conclusive even in a direct proceeding to modify or change it, as well as in all collateral proceedings. (DOWNEY and PETTIT, JJ., dissented.)

SAME.—*Court May Reserve Power to Modify Decree.*—In decreeing a divorce, a court may reserve the power to open, alter, and modify the decree, in reference to the care and custody of minor children, by expressly reserving the power, or by providing that the custody shall continue until the further order of the court.

From the Madison Circuit Court.

*J. W. Sansberry, E. B. Goodykoonts,* and *H. D. Thompson,* for appellant.

*J. A. Harrison,* for appellees.

BUSKIRK, C. J.—The record in this cause presents for our decision two questions:

First. Did the court below possess the power to grant the relief asked?

Second. Did the facts recited in the complaint justify the granting of the relief prayed for?

It appears from the complaint, that Jeremiah Sullivan and Drusilla Sullivan were husband and wife until the 2d day of February, 1870, when, by the judgment of the Madison Common Pleas, the marriage contract was set aside, and the par-

ties were divorced ; that, by such decree, the care, custody, and education of Lawrence Sullivan, one of their children, was given to the said Drusilla, and the care, custody, and education of Bernard Sullivan was given to Jeremiah ; that, subsequent to such divorce, the said Drusilla had intermarried with her co-defendant Judson Learned ; that they had removed to Kokomo, in said State ; that they contemplated removing to the State of Minnesota, taking with them the said Lawrence ; that the plaintiff is informed, and so charges, that said defendants and other members of their family are, at times, very cruel in their treatment of the said child ; that said defendants are not proper persons to have the custody of the said child ; that the said Drusilla has no separate property or effects of her own right, with which to maintain the said child ; and that said child has no property or means with which to support itself.

The prayer of the complaint was for the modification of the former decree, and that he should have the custody and control of his said son Lawrence.

The appellees filed a cross complaint, to which the appellant demurred. The court overruled the demurrer to the cross complaint, but carried it back and sustained it to the complaint, and this ruling is assigned for error.

The decree giving to Drusilla the care, custody, and education of Lawrence was absolute and unconditional. There was no limitation as to time. There was no reservation of power to alter or change it. There was no provision that she should have such custody until the further order of the court. The decree was absolute and final. In such case, it is conclusive between the parties in all collateral proceedings. *Williams* v. *Williams*, 13 Ind. 523.

But this is a direct proceeding to modify and change the decree as to the custody of the children, and we are required to determine whether, under the statute of 1852, the court below possessed the power to so modify such decree.

It is provided, by section 9 of the act concerning divorces, Acts 1838, p. 244, that "the court, in making a decree of

divorce, shall take into consideration the age and sex of the children, if any, and shall make orders, and from time to time may alter or amend the same, respecting the custody, sustenance and guardianship of the said children."

Section 62 of chapter 35, R. S. 1843, reads as follows:

" Upon the dissolution of a marriage by a sentence of nullity, or a decree of divorce, the court may make such decree for the care, custody, and maintenance of the minor children of the parties, and may determine with which of the parents the children, or any of them, shall remain, as to the court shall seem proper and expedient, having due regard to the age and sex of such children ; and from time to time, after the rendition of such decree, on the petition of either of the parents, the court may revise and alter such decree concerning the care, custody, and maintenance of the children, and make a new decree concerning the same, as the circumstances of the parents and the benefit of the children shall require."

Section 21 of the act of May 13th, 1852, concerning divorces, provides, that " the court in decreeing a divorce shall make provision for the guardianship, custody, and support and education of the minor children of such marriage." 2 G. & H. 353.

By the above quoted section, it is made the imperative duty of the court, in decreeing a divorce, to make provision for the guardianship, custody, and support and education of the minor children. Such provision constitutes an essential part of the decree, and has the same force and effect as any other portion of the decree.

In *Williams* v. *Williams, supra,* it was held, that a decree concerning the custody of children was, between the parties, conclusive ; and the court expressly withheld any opinion as to the power of the court to alter or modify it.

It is to be observed that the statute of 1852 does not, as do the codes of 1838 and 1843, contain a provision giving to the court the power to alter and modify the decree concerning the custody of the children.

The legislature of 1859, in an amendatory act of the divorce

law, provided, that "parties against whom a judgment of divorce has been heretofore or shall be hereafter rendered, without other notice than publication in a newspaper, may have the same opened at any time so far as relates to the care, support, and custody of the children." 2 G. & H. 349, sec. 7. *Ewing* v. *Ewing*, 24 Ind. 468.

Section 21 of the divorce act of March 10th, 1873, Acts 1873, p. 107, is the same as sec. 21, above quoted, of the act of May 13th, 1852.

Section 6 of the act of 1873 contains the same provisions as section 7 of the amendatory act of 1859.

The failure of the legislature of 1852 to re-enact the provisions of the code of 1838 and 1843 is very significant, and should have a controlling influence in the decision of the question under examination. But the acts of 1859 and 1873 conferring upon the court the power, where there has been only constructive notice, to open, change, and modify the decree concerning the care, support, and custody of the children, contain legislative constructions of the act of 1852, which ought to be conclusive of the question, that it was the intention of the legislature of 1852 to provide, that where the decree was absolute and final, it was to be regarded as conclusive between the parties.

It is provided by section 43 of the code, 2 G. & H. 66, that parties against whom a judgment has been rendered without other notice than the publication in a newspaper, herein required, except in cases of divorce, may, at any time within five years after the rendition of the judgment, have the same opened, and be allowed to defend.

The code further provides, that "no complaint shall be filed for a review of a judgment of divorce." Section 586, 2 G. & H. 279.

It was held, in *Ewing* v. *Ewing, supra,* that divorce cases are not embraced by sections 99 and 356 of the code.

After a very careful examination of the English and American cases, we have been unable to find any case which holds, in the absence of a statute similar to the provisions in the codes

of 1838 and 1843, and in the absence of a reservation in the decree of the power of modification, that a decree in reference to the custody, care, support, and education of the children of the marriage can be opened and altered.

It is true, that Bishop, in his work on Marriage and Divorce, says that such a decree may be opened, and altered and modified, and, in support of such proposition, refers to quite a number of New York cases. We have examined all of the cases cited, and find that the ruling in each case was based upon a statute of that State, which, in express terms, like the statutes of this State above cited, provided that the decree in reference to the care, support, custody, and education of the children, might be opened, altered, and modified. Such cases cannot be regarded as authority, in the absence of similar statutes.

We are also referred to the case of *Bush* v. *Bush,* 37 Ind. 164, where this language is used, in speaking of the decree in reference to the care, support, custody, and education of the children : " This order is subject to the control of the lower court, and may be changed upon good cause shown."

We have examined the record in that case, and find that the decree expressly reserves the power to alter and change the decree in reference to the children. The remark quoted was made in view of the fact that the decree was conditional and subject to change.

The case of *Darnall* v. *Mullikin,* 8 Ind. 152, was a proceeding to modify a decree, in reference to the custody of the children, which was rendered under the code of 1843, and the decree in express terms provided, that the mother should have the custody until the further order of the court.

It is well settled that a former decree in a suit in equity between the same parties, and for the same subject-matter, is a good defence in equity, even although it be a decree merely dismissing the bill, if the dismissal is not expressed to be without prejudice. Section 1523, 2 Story Eq. Juris. 861, and authorities cited.

Freeman on Judgments, sec. 313, lays down the doctrine,

Sullivan *v.* Learned *et ux.*

that a decree of divorce, so far as it relates to the *status* of the parties, is binding upon all the world, and that in other respects it has the same force and effect as other judgments.

This is a question of the custody of the children of the marriage, and not of their guardianship. The statute regulating the appointment and removal of guardians has no application to the question under examination. Besides, such statute, in express terms, gives to the court the power to remove guardians for cause shown. Instead of this statute supporting the position contended for by counsel for appellant, it affords another legislative construction, that the court would have no power to remove guardians in the absence of such express authority. If the power to modify a decree as to the custody of children, or to remove a guardian, was an inherent attribute of courts and could not be parted with, surely the legislature would not have deemed it necessary to confer such power by express provisions in the many instances given in this opinion ; and similar provisions will be found in reference to executors and administrators.

We think there is no doubt that the courts of this State may, in decreeing a divorce, make a temporary and provisional order in reference to the care, custody, support, and education of the minor children of the marriage, and may, in such decree, reserve the power to open, alter, and modify, as the best interests of the parents and children may render necessary and proper. This may be done by expressly reserving the power, or by providing that the custody shall continue until the further order of the court. By such provisional orders, the court would retain jurisdiction of the cause, and jurisdiction over the persons could be obtained by service of notice of an application to open and modify such decree.

In the opinion of the court, no final and absolute decree should ever be entered. The change in the circumstances and habits of the parents or other custodians will frequently necessitate a modification of the decree, and the power to do

so should never be parted with, by the courts, by making a final and absolute decree.

The condition of the child in controversy is no worse than if its parents were living together as husband and wife, or if one of them was dead. The courts possess the same power to protect such child from cruelty and abuse as they would possess if it was living with both its parents.

But, conceding that the court below possessed the power to open, alter, and modify the decree, the matters stated in the complaint were wholly insufficient to justify its exercise. In a legal sense, there are no facts stated. There are some conclusions stated from information, the source and reliability of which are not given.

The demurrer to the cross complaint was properly carried back and sustained to the complaint.

The judgment is affirmed, with costs.

Downey, J.—So far as the above opinion announces it as the law, that the court making an order for the guardianship and custody of the minor children of the parties, on granting a divorce, can not afterward, on a proper application to it, change the guardianship and custody of the children, unless the power or right to do so be expressly reserved in the order, I can not concur therein. I can not think a parent or other person appointed as guardian or custodian of a child, under such circumstances, can have any vested and perpetual right to the guardianship and custody of the child. The court is not required to appoint one of the parents as the person who shall be the guardian and have the custody of the child, but may appoint one who intervenes, or any other suitable person. The court is required by the statute " to make provision for the guardianship, custody," etc., of the child, but may make its own choice as to the person who shall be appointed. If the appointment, when once made, is irrevocable, unless the right to revoke it is expressly reserved, then no matter how circumstances may change, how unfit the person may become, to whom the guardianship and custody may have been com-

mitted, there can be and is no remedy; the child must suffer the consequences, however disastrous they may be. The court has tied its own hands and is powerless to grant any relief. I do not think the court can thus part with its power and deprive itself of the authority which it possesses. There is a plain difference between the decree or judgment, by which the divorce is granted, and the order which the court is authorized to make, as an incident, with reference to the guardianship and custody of the infants. I concede, also, that when an order has been made appointing a guardian for the children and assigning their custody, this appointment must, like any other appointment of a guardian or custodian, control the rights of the parties until it is changed by the order of the court which made it, in a proceeding for that purpose.

Hence, it has been held that the guardianship, etc., can not be changed on a proceeding by *habeas corpus.* *Williams* v. *Williams,* 13 Ind. 523. But this is exactly the rule with reference to any other guardianship.

In my opinion, the subject of such an order is one over which the court can not part with its control; but the children, under such circumstances, become the wards of the court, and the court is bound, independent of any statute or reservation of authority, to exercise its supervisory care over them from time to time, and as often as their welfare may require. Every court having appointed a guardian or person to have the custody of an infant necessarily retains its power and authority to remove the guardian or change the custody of the infant. Accordingly, it is provided by statute as follows: " The court by whom or by whose clerk any guardian has been or may be appointed, or the judge thereof, in vacation, may, at any time, remove such guardian, upon written application of his wards or ward, or any persons in behalf of said wards or ward, for habitual drunkenness, neglect of his duties, incompetency, fraudulent conduct, removal from the county, or any other cause which, in the opinion of such court, or the judge thereof, in vacation, renders it for the interest of the ward that such guardian shall be removed, he

having five days notice thereof, except that where such guardian so conceals himself that notice can not be served, or his residence is unknown, or he has removed from the State, no notice shall be required." Acts 1867, p. 130.

The act is an amendment of sec. 11, p. 568, 2 G. & H., on the subject of guardian and ward. This statute confers the power to remove upon every court, by whom or by whose clerk any guardian has been appointed, and it relates to any and every kind of guardian. It is in pari materia with the divorce law, which authorizes the court to provide for the guardianship and custody of the minor children of the parties when a divorce is granted. But independent of this statute, I think the court has full and complete power over the subject, whether it has, in form, reserved the power in the orders or not.

I do not feel the force of the argument drawn, in the majority opinion, from the fact that the statutes of 1838 and 1843 expressly reserved the power of the court to change the guardianship and custody of children under such circumstances. This consideration, to my mind, has just the opposite tendency. It tends to show what should be the construction given to the present statutes, as it can hardly be presumed that the legislature would purposely and suddenly make such an unaccountable change in the law on this subject. The rule by which statutes in pari materia are to be construed together allows us to look at repealed or superseded statutes on the same subject, in order to arrive at the proper construction of an existing statute. The fact that the legislature has provided for opening judgments or orders of this kind, in one class of cases, does not prove that it could not have been done in such or in all cases without such legislation.

The opinion of the majority of the court avoids, or attempts to avoid, the force of the statute authorizing all courts to remove any guardian, by saying the question here is "a question of the custody of the children of the marriage, and not of their guardianship." This is putting an order for the mere custody of the child, if it is a different thing from its guar-

dianship, on higher ground, and making it more perpetual and irrevocable than a regular guardianship. It is conceding that the court may change the guardianship of the child, but can not change its custodian.

If one to whom the custody of a child is given is not its guardian, then he must be something less than a guardian and, for this reason, more perfectly under the control of the court than a guardian. I have made no extended search for authorities upon the point in question. It seems, however, to be the law in England, that such orders are subject to be modified and changed by the court as the circumstances of the case may require. Thus in *March* v. *March,* Law Reports, 1 P. & D. 437, the parties had been divorced, and the case was afterward before the court with reference to the custody of the only child of the marriage, a boy of six years, and the judge ordinary said: "Any order the court makes for the custody of a child is in itself temporary, and may be set aside or varied on a change of circumstances, or other sufficient cause shown."

This language expresses my views exactly, and it was used in a case unaffected by statute, and where no power or authority had been expressly reserved to change or modify the order.

PETTIT, J., unites in the foregoing dissenting opinion.