[Civ. No. 5164. Third Appellate District.—November 26, 1934.]

SARAH FRANCES RYDER, Respondent, v. ROYAL SIMMERAL RYDER, Appellant.

Charles Kasch for Appellant.

Walter Barry and F. Walter French, *Amici Curiae*, on Behalf of Appellant.

Taft & Spurr for Respondent.

PULLEN, P. J.—In this action for divorce the trial court granted the motions of plaintiff for maintenance, counsel fees and court costs. From these orders defendant appeals, claiming that the relationship of husband and wife had terminated prior to the filing of the complaint and the making of the orders here complained of, by virtue of a decree of

divorce granted defendant in the state of Chihuahua, in the Republic of Mexico. Defendant also asserts that in any event the allowance made was excessive, and that plaintiff is estopped by her conduct from claiming the invalidity of the Mexican divorce.

The parties hereto were married in San Francisco in 1907, and in 1922 moved to the county of Mendocino, where defendant was and is employed, and where they lived together continuously as husband and wife until some time probably in May, 1933.

In January, 1933, defendant informed plaintiff he desired a divorce and submitted a property settlement which was executed by the parties. In June, 1933, defendant submitted to plaintiff for her signature, a certain document in the following words:

"Luis A. Trias
Mexican Lawyer
Ciudad Juarez, Chih.

"To the Judge of the First Instance.
Present.—

"Sarah F. Goss Ryder, of majority, Northamerican, respectfully appears to state:

"That I have taken cognizance of that certain divorce filed against me in this Court by my husband Royal Simeral Ryder and respectfully submit:

"That I declare myself as being in conformity with the purport of its terms, as presented in this Honorable Court, and by virtue of the aforementioned and in accord with article 19 of the Law of Divorce, I attentively pray that your Honor pronounce Judgment of Divorce within the three days as provided by law.

"Wherefore I petition the legal necessity hereabove.

"State of ⎱ ss
County of ⎰

"Sarah F. Ryder, being by me first duly sworn, deposes and says:

"That she is the answering party in the above entitled case and has read the foregoing confession of judgment and knows the contents thereof and that the same is true of her own knowledge except as to matters as are therein stated

upon her information or belief, and as to those matters that she believes it to be true.

SARAH F. RYDER

"Subscribed and sworn to before me
this day 30th of June, 1933.
J. C. HURLEY
Notary Public in and for the County
of Mendocino, State of California."

On July 3, 1933, there was filed in the first civil court of Bravos District, Juarez, state of Chihuahua, upon behalf of defendant, a petition for divorce upon the ground of incompatibility, and thereafter on July 7, 1933, a decree purporting to dissolve the marriage of plaintiff and defendant was issued out of said court. Thereafter, in August, defendant went through a marriage ceremony in the county of Los Angeles with a woman other than plaintiff and since that time they have been living together as husband and wife.

It further appears that defendant had never been in Mexico except perhaps for a very brief period several days prior to the time herein referred to, when he visited Tia Juana, Mexico.

It will be observed that the document hereinbefore set forth was addressed to no court, bore no filing marks of any proceeding, apparently refers to a divorce filed several days prior to the proceedings here involved, and was produced by defendant himself at the hearing herein. It is quite apparent that the courts of the Republic of Mexico never acquired jurisdiction of the *res* nor of the parties to the action. Under these facts and circumstances, to hold such a proceeding as constituting a valid divorce would do violence to all our conceptions of such actions and tend to utterly destroy the sanctity of the marriage status, as well as upholding a fraud upon the courts of Mexico itself.

We are not here concerned with the "full faith and credit" clause of the Constitution of the United States, for that provision is not applicable to judgments of foreign countries, nor is our attention called to any treaty existing between the United States and Mexico dealing with questions of divorce. However, section 1915 of the Code of Civil Procedure et seq., recognizes the effect of foreign judgments where the foreign tribunal has jurisdiction to act in the

cause, over the parties and over the thing, when the specific thing is the subject of the judgment, but under the facts here existing no assistance is accorded defendant and appellant by that section, because of the lack of the very elements specified.

■ The general rule is that jurisdiction over the subject-matter of divorce rests upon domicile, or at least residence of one of the parties, and a decree of divorce rendered in a foreign jurisdiction may be impeached and denied recognition upon the ground that neither of the parties had such domicile or residence at the divorce forum notwithstanding the recitals in the decree. (Note, 39 A. L. R. 677, and cases cited.) ■ Neither recitals in the decree nor consent of the parties can confer jurisdiction in the face of evidence that plaintiff in the divorce action did not have a *bona fide* residence. ■ It is a general rule that domicile is changed from one place to another only upon the abandonment of the first place of domicile with the intent not to return and by taking up a residence in another place with the intention of permanently residing in that place. (9 R. C. L. 542.) ■ The first essential for the validity of a decree of divorce between parties is that it should be pronounced by a court of competent jurisdiction, and one of whom at least is a *bona fide* subject of that jurisdiction. ■ Even in this country where it is prescribed by the Constitution that full faith and credit must be given in each state to the judicial proceedings of another it is well settled that the record of a judgment rendered in another state may be contradicted as to the facts necessary to give the court jurisdiction, and if the want of jurisdiction appears on the face of the record or is shown either as to subject-matter or the person, the record will be regarded as a nullity. (*Thompson* v. *Whitman*, 85 U. S. 457 [21 L. Ed. 897].) The rule is certainly as strong if not stronger, when applied to a court of a foreign country. It would be unfair to the courts of Mexico to presume that it would have been a party to such a proceeding if it had known that neither plaintiff nor defendant therein had ever been in Mexico during the year 1933; that during all of the time in question defendant maintained his residence and his employment in California, and that plaintiff had never

consented to submit to the jurisdiction of the Mexican courts.

■ A foreign divorce obtained through simulated residence and not in good faith is open to attack in the state of the real matrimonial domicile, and the party sought to be bound by it may always impeach its validity and escape its effect by showing that the court which rendered it had no jurisdiction over the parties or the subject-matter, and the jurisdiction of such court may be controverted by extraneous evidence. (*Kadello* v. *Kadello*, 220 Cal. 1 [29 Pac. (2d) 171]; *Delanoy* v. *Delanoy*, 216 Cal. 27 [13 Pac. (2d) 719, 86 A. L. R. 1321]; *Galloway* v. *Galloway*, 116 Cal. App. 478 [2 Pac. (2d) 842]; *Broder* v. *Broder*, 122 Cal. App. 296 [10 Pac. (2d) 182]; *Warren* v. *Warren*, 127 Cal. App. 231 [15 Pac. (2d) 556]; *Steinbroner* v. *Steinbroner*, 30 Cal. App. 673 [159 Pac. 235]; *Fox* v. *Mick*, 20 Cal. App. 599 [129 Pac. 972]; *Thompson* v. *Whitman, supra; Hanley* v. *Donoghue*, 116 U. S. 1 [6 Sup. Ct. 242, 29 L. Ed. 535].)

As was said in the case of *Warren* v. *Warren, supra:* "A *bona fide* residence is essential to jurisdiction and a valid decree of divorce cannot be founded upon a simulated domicile, nor a residence undertaken for the purpose of securing such a decree."

However, in the instant case it is apparent from the face of the record that a fraud had been perpetrated upon the courts of Mexico, for it is recited in the decree itself that "said plaintiff had established his domicile in compliance with the existing laws", and "that the court's jurisdiction was established by the certificate of the plaintiff's domicile duly registered in the Public Registry".

There is nothing in the record to indicate what the law of Mexico is concerning divorce. We have been directed to no statute or code or other law of that country governing the subject of divorce. ■ If, however, it be assumed that the laws of that country require no residence nor the presence of the parties within its territory as a basis of jurisdiction, and that the formal requirements established by Mexican law were met, then the divorce cannot be recognized under the laws of this state. A decree of divorce rendered by any jurisdiction in which neither of

the parties have domicile is not entitled to full faith and credit and will not be recognized and enforced in California.

It also appears that the divorce was granted upon the grounds of incompatibility, which is not a ground for divorce in California. The matrimonial domicile of the parties having at all times been in the state of California, any case for divorce urged by defendant in the courts of Mexico must necessarily have occurred within the state of California. Under the laws of California no cause of action having been set forth, this state cannot recognize a divorce upon the grounds alleged.

The recent case of *Bergeron* v. *Bergeron*, (Mass.) 192 N. E. 86, decided by the Supreme Court of Massachusetts, is quite similar to the present case, and reaches the conclusion that "to recognize Mexican divorces as valid under the circumstances here declared would frustrate and make vain all state laws regulating and limiting divorces. By such recognition state control over the marriage relation would be destroyed."

Appellant herein also contends that having established the fact of his second marriage the presumption is that such marriage is valid and the burden of proving the contrary is on plaintiff. Such is the rule. The burden of proof is on the party assailing the marriage, to show not only the former marriage but also that it has not been dissolved by death or judicial decree. In this case, however, we have ample evidence to support the burden of proof resting upon plaintiff. Both parties to the first marriage were before the court. Plaintiff testified positively to its continuous existence, and the failure of defendant, being present, to introduce evidence showing its termination created a presumption which supported the contention of plaintiff that the first marriage between the parties hereto was still in full force and effect. (Code Civ. Proc., sec. 2061.) Appellant also contends that by reason of the written submission by plaintiff to the jurisdiction of the courts of Mexico and the subsequent marriage of defendant, plaintiff is now estopped from claiming the existence of the marriage relation between the parties hereto.

It has been repeatedly held that any contract between the parties having for its object the dissolution of the marriage contract, is void as against public policy. (9 Cal.

Jur. 636; *Roberts* v. *Roberts*, 83 Cal. App. 345 [256 Pac. 826] ; *Whiting* v. *Whiting*, 62 Cal. App. 157 [216 Pac. 92].) In *Rehfuss* v. *Rehfuss*, 169 Cal. 86 [145 Pac. 1020], our Supreme Court has defined the position of the state as a party in a divorce action, where it says:

"Where an attempt is made through the courts to undo a marriage the state becomes in a sense a party to the proceedings, not necessarily to oppose, but to make sure that the attempt will not prevail without sufficient and lawful cause shown by the real facts of the case, nor unless these conditions are found to exist at the time the decree is made upon which the state permits a divorce to be granted. The state has an interest in the maintenance of the marriage tie, which neither the collusion nor the negligence of the parties can impair."

It requires the citation of no authority that the consent of the wife could not confer jurisdiction to grant the husband a decree of divorce within the United States, and the same rule extends to a foreign jurisdiction. It would be a strange situation if the court where the parties reside were bound by the rules of public policy and the parties could, by subterfuge or evasion, by correspondence, obtain a decree in another forum.

It also should be noted that the instrument hereinbefore set forth purporting to consent to the jurisdiction, is merely a blanket authorization and directed to no particular court or tribunal and does not appear even to have been presented or recorded by any tribunal, and judging from the tense of the document, did not refer to the proceedings here involved. The purported consent being void however, as against public policy, cannot in any event create an estoppel.

Lastly, it is urged that in view of the financial condition of the defendant, the amounts allowed by the court for support and for counsel fees and costs on appeal, are excessive. This is a matter almost entirely within the discretion of the trial court which has already passed upon the matter and determined in its opinion the proper amount to be allowed for maintenance, court costs and attorney fees. While the amounts appear to be somewhat liberal there is nothing before us to justify our substituting our opinion in the place of that of the trial court.

For the reason as stated before, the judgment and orders are hereby affirmed.

Plummer, J., and Thompson, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 24, 1935.