DOMENICA E. SANTANGELO *v.* JOHN SANTANGELO

DOMENICA E. SANTANGELO *v.* GIOVANNI SANTANGELO

BROWN, C. J., JENNINGS, BALDWIN, INGLIS and O'SULLIVAN, Js.

Argued November 14, 1950—decided January 9, 1951

*William L. Hadden,* with whom were *Herman M. Levy, James O. Shea* and, on the brief, *Clarence A. Hadden* and *Leonard L. Levy,* for the appellant (defendant).

*Louis Evans,* with whom were *Edward Cohen* and *Jack H. Evans,* for the appellee (plaintiff).

JENNINGS, J. The plaintiff was successful in two suits. They were tried together. In one she obtained a decree of divorce with alimony and counsel fees; in the other, a judgment to reimburse her for moneys expended for a period of six years prior to the institution of the action. The defendant in each suit is one and the same person. He appealed on the principal ground that the facts found do not support the conclusions reached. The facts are complicated and dramatic but the analysis of both facts and law in the helpful memoranda of the trial court shows that those essential to

the decision of the legal issues can be simply stated. The finding is not attacked.

The parties were married in Italy in 1920. In 1922 the defendant left the plaintiff to make his fortune in America and told her that he would send for her when he had established himself. He arrived in Connecticut in 1932 via Argentina, Chile, Panama and Yonkers, New York. He was then a citizen of the United States. Up to that time he had corresponded with the plaintiff and sent her a part of his earnings. In that year he secured an immigration visa for her but she was never informed of this, nor did the defendant send her any money or steamship ticket. She at all times wanted to come to the United States.

In 1931 the defendant met Carrie Altorelli and thereafter became intimate with her. Their first child was born in 1935. In 1936 they went to Reno, Nevada, where the defendant secured a divorce from the plaintiff in the shortest time permissible under Nevada law. The decree was granted October 23, 1936. The plaintiff had actual notice of the pendency of this suit but did not appear or in any way contest it. In November, 1936, the defendant left Nevada. On January 2, 1937, he married Carrie Altorelli in New York and they have lived together as husband and wife in Connecticut since that time. Two other children have been born to them. The defendant has amassed considerable property and his annual taxable income for the last five years has been between $19,000 and $49,000. The plaintiff has no property of any kind.

The trial court's basic conclusion, on which the outcome of both suits hinges, is that the plaintiff, an alien, can attack collaterally, in the Superior Court of Connecticut, the validity of the Nevada divorce. The subsidiary conclusions, such as that concerning the sufficiency of proof of the right of the plaintiff to support,

and its amount, and of proof of the grounds for divorce, and that determining the issue on the defendant's affirmative defense of recrimination, were based on questions of fact and cannot be disturbed. Neither can the conclusion be disturbed that the Reno divorce decree was not entitled to recognition in Connecticut on the ground that John Santangelo neither abandoned his Connecticut domicil nor acquired a domicil in Nevada. The plaintiff's evidence warranted the court's conclusion. The defendant offered no evidence to controvert it. It is unnecessary to detail the facts relevant to this issue. They are much stronger for the plaintiff than were those in a recent case wherein a Nevada decree was refused recognition in this state. *Rice* v. *Rice,* 134 Conn. 440, 58 A. 2d 523, aff'd, 336 U. S. 674, 69 S. Ct. 751, 93 L. Ed. 957; 23 Conn. B. J. 280. The question of the right of the plaintiff, as a nonresident alien, to attack the validity of the Nevada decree was raised by a plea to the jurisdiction and by claims of law on the trial. The trial court ruled against the defendant. It may be noted in passing that, unless the plaintiff has this right, she is remediless.

A resident of Connecticut can attack collaterally the validity of a judgment of divorce granted in another state on the ground that the court lacked jurisdiction. *Hooker* v. *Hooker,* 130 Conn. 41, 47, 32 A. 2d 68; *State* v. *Cooke,* 110 Conn. 348, 350, 148 A. 385. This is the general rule. *Williams* v. *North Carolina,* 325 U. S. 226, 229, 65 S. Ct. 1092, 89 L. Ed. 1577, 157 A. L. R. 1366; 1 Beale, Conflict of Laws § 111.2, note 5. This is true whether the decree attacked is decisive of property rights; *German Savings & Loan Society* v. *Dormitzer,* 192 U. S. 125, 128, 24 S. Ct. 221, 48 L. Ed. 373; of the status of a party to a suit for divorce; *Steinbroner* v. *Steinbroner,* 30 Cal. App. 673, 674, 159 P. 235; or of support. *State* v. *Cooke,* supra.

The fact that the plaintiff is a nonresident is no bar to a suit for support. *Mings* v. *People ex rel. McCune,* 111 Ill. 98, 100; *Artman* v. *Artman,* 111 Conn. 124, 126, 149 A. 246; see *Riggs* v. *Riggs,* 91 Kan. 593, 595, 138 P. 628; 2 Beale, op. cit., § 454.1 et seq. An alien stands on the same footing ordinarily as a nonresident. Our public policy, as reflected in our constitution, is that our courts should be open to "every person." Conn. Const. Art. 1 § 12; *Paquin, Ltd.* v. *Westervelt,* 93 Conn. 513, 516, 106 A. 766; see *Ex Parte Kawato,* 317 U. S. 69, 71, 63 S. Ct. 115, 87 L. Ed. 58; *Janusis* v. *Long,* 284 Mass. 403, 405, 188 N. E. 228; *Sliosberg* v. *New York Life Ins. Co.,* 244 N. Y. 482, 491, 155 N. E. 749.

In this court, as in the trial court, the main reliance of the defendant was on a series of New York cases, cited in the footnote.[1] They are distinguishable. New York has adopted the rule that under certain circumstances it is violative of its public policy to recognize foreign divorces granted on grounds other than adultery, the only statutory ground in that state. The cases cited hold nothing more than that New York courts will apply that principle only to protect its own citizens. In the case at bar, full faith and credit is denied the Nevada decree solely on the ground that the court lacked jurisdiction, not because recognition of the decree would be contrary to public policy. As to the other cases cited by the defendant, in *Curley* v. *Curley,* 120 F. 2d 730, neither party was a resident of the District of Columbia, where the suit was brought, and (p. 732) "there [was] no showing that the welfare of children, rights of property, or other public interests, in the District [were] in any way affected"; *Goodloe* v.

---

[1] *Hubbard* v. *Hubbard,* 228 N. Y. 81, 126 N. E. 508; *Ball* v. *Cross,* 231 N. Y. 329, 132 N. E. 106; *Powell* v. *Powell,* 211 App. Div. 750, 208 N. Y. S. 153.

*Hawk,* 113 F. 2d 753, 756, merely decided that laches and estoppel would be applied in a proper case.

The principal issue, whether the plaintiff can attack the Nevada decree, was correctly decided. This applies to both the divorce and support actions, for the defendant conceded in his brief that the rights and liabilities in the latter would follow the former.

The defendant claims that the plaintiff is barred by her laches. It is true that the Reno divorce was over ten years old when this action was brought and that the defendant has remarried, but the circumstances were unusual. The plaintiff was in a foreign country and without funds. Italy was at war, either in Africa or in Europe, for nearly the whole period. A similar plea was disallowed in *Mills* v. *Mills,* 119 Conn. 612, 621, 179 A. 5. The remarks of the commentator, note, 12 A. L. R. 2d 153, 155, are pertinent and supported by the cases cited: "But if the second spouse of a divorced person is not innocent, she or he is not entitled to much consideration in equity. Thus, where the second wife of a divorced man lived with him in adultery before the divorce, or if she knew or had notice of the facts justifying the vacation of the decree, she is not entitled to consideration when determining whether to vacate the divorce decree."

The only other assignment of error pursued in the brief relates to the admission in evidence of certain answers to interrogatories made in response to a motion of disclosure and evidence admitted in connection therewith. The defendant objected on the ground that the answers exposed him to self degradation and self incrimination. General Statutes § 7951. The trial court indicated in its memorandum that it endeavored to protect both the defendant and the woman with whom he was living against any degrading or incriminating admissions. As far as appears of record,

it was entirely successful in that regard. There is nothing either in the interrogatories which were admitted in evidence or in the testimony of the defendant as printed in the finding in connection therewith which is objectionable on that ground. The defendant takes nothing by this assignment of error.

There is no error in either case.

In this opinion the other judges concurred.